[No. A057402. First Dist., Div. Four. Oct. 29, 1993.]

CENTEX REAL ESTATE CORP. et al., Appellants, v.
CITY OF VALLEJO et al., Respondents.

## COUNSEL

McCutchen, Doyle, Brown & Enersen, Geoffrey L. Robinson and Marie A. Cooper for Appellants.

John M. Powers, City Attorney, and John J. Pomidor, Assistant City Attorney, for Respondents.

Williams & Woods and Michael R. Woods as Amici Curiae on behalf of Respondents.

## OPINION

PERLEY, J.—This appeal challenges the validity of an excise tax enacted by the City of Vallejo by Ordinance No. 1058. Appellants, Centex Real Estate Corp., Davidon Homes and The Lusk Company, real estate developers, contend that the ordinance was enacted to circumvent the requirements of Government Code[1] section 66000 et seq. which restrict the imposition of development fees and that the excise tax is in effect a prohibited fee. We conclude that the excise tax is valid and affirm.

### FACTUAL BACKGROUND

On August 29, 1989, the City Council of the City of Vallejo (the City) adopted Ordinance No. 1058 which imposes a property development excise tax on developers as a condition of the issuance of a building permit. Appellants brought this action seeking a writ of mandate directing the City to rescind its ordinance and to refund taxes collected. They contended that the tax was in fact a development fee subject to the provisions of section 66000 et seq. and was therefore invalid. Following a hearing on the writ, the trial court denied appellants relief, finding that the City had the right to tax developers for the privilege of developing or using property and that the purpose of the tax was to raise revenues for the City's general fund and not to fund the cost of public facilities or services related to a new development. The court further found that the ordinance did not conflict with section 66000 et seq.

### DISCUSSION

Ordinance No. 1058 was enacted pursuant to the Constitution and section 707 of the Vallejo City Charter. (Cal. Const., art. XI, § 5, subd. (a).) It

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

imposes an excise tax on property development. It is a "general tax imposed on the privilege of developing property and benefiting from City services. . . . [¶] . . . Revenue derived from this Tax shall be added to the City's general fund to support general community services provided now and in the future." The rate of taxation imposed is $3,000 per unit of residential development and $.30 per square foot of nonresidential development. The excise tax is payable "before approval and issuance of a building permit for any property development . . ." In enacting Ordinance No. 1058, the city council found that an excise tax was an equitable manner in which to distribute the burden of supporting community services.

Appellants contend that the excise tax is in fact a development fee and that the City enacted the tax to evade the limitations on exactions as stated in section 66000 et seq.

In 1987, the Legislature enacted sections 66000 to 66003[2] in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects. (See Sen. Local Government Com. Analysis of Assem. Bill No. 1600 (1987), p. 1.)[3] Sections 66000 to 66003 set forth uniform procedures for imposing development fees and require that local agencies demonstrate a reasonable relationship between the fee imposed and the proposed project's burden on the community. (*Ibid.*)

Section 66001 sets forth the procedures a local agency must follow prior to enacting a development fee. It provides that a local agency must "(1) Identify the purpose of the fee. [¶] (2) Identify the use to which the fee is to be put. If the use is financing public facilities, the facilities' shall be identified . . . . [¶] (3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed. [¶] (4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed." Section 66001 also requires the local agency to account for the fee and to refund any portion of the fee not expended within five years unless the local agency can demonstrate a reasonable relationship between the unexpended fee and its purpose. (§ 66001, subds. (c)-(e).) A fee is defined as a "monetary exaction, *other than a tax* or special assessment, which is charged by a local agency to the applicant in connection with

---

[2]Sections 66000 to 66003 were proposed as Assembly Bill No. 1600 in the 1987-1988 Regular Session of the Legislature.

[3]In view of the fact that the legislative history of section 66000 et seq. is relevant to our resolution of this appeal, we have granted appellants' request for this court to take judicial notice of that history.

approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (§ 66000, subd. (b), italics added.)

It is well settled that "the objective of statutory interpretation is to ascertain and effectuate legislative intent. . . . In determining intent, we look first to the words themselves. . . . If the statutory language is clear and unambiguous, there is no need for construction." (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 606 [257 Cal.Rptr. 320, 770 P.2d 732], internal citations omitted.) As is apparent from the express statutory language of section 66000, a tax is excluded from the requirements of section 66000 et seq. Contrary to appellant's view, therefore, section 66000 et seq. does not prohibit the City from enacting the excise tax.

■ The City can be precluded from imposing a tax only by its charter or if the tax conflicts with a state statute. "Their ability to impose revenue taxes can be curtailed only by the charter itself or when 'in direct and immediate conflict with a state statute or statutory scheme.' " (*The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656, 660 [175 Cal.Rptr. 336, 630 P.2d 521].)

■ Here, the City's charter authorizes enactment of the tax[4] and appellants have failed to show that Ordinance No. 1058 conflicts with any state statute.

■ " '[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. . . .' [Citations.] If the validity of the measure is 'fairly debatable,' it must be sustained. [Citations.]" (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247].) The burden of demonstrating the invalidity of a statute rests with the party assailing it. (See *Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].)

■ Appellants have failed to sustain their burden. They argue that the excise tax is invalid because the legislative history of Ordinance No. 1058 reflects that the excise tax circumvents the requirements of section 66000 et seq. and is in fact a fee. That legislative history, however, does not support appellants' view. It shows that the City sought to comply with the mandate of section 66000 et seq. rather than circumvent the statute.

---

[4] Section 707 of the Charter provides that "[t]he [City Council of the City of Vallejo] may, by ordinance, provide for any tax . . . permitted by this Charter or by the constitution or general laws of the State."

Ordinance No. 1058 imposed a "Property Development Excise Tax" which replaced two existing taxes, the real property development tax (RPDT) and the bridge construction development tax (BCDT). These latter taxes were specifically directed at developers and were imposed to finance needed public facilities for new development. In response to the enactment of section 66000 et seq. the City retained the firm of Arthur Young and Associates as consultants to provide guidance on complying with the mandates of that legislation. Because the Arthur Young study concluded that the existing development taxes might be construed as development fees under section 66000 et seq., it recommended that the City enact a general tax to provide a revenue source for general governmental purposes. Based on the Arthur Young study, the city manager recommended to the city council that the existing development taxes be modified and that a general tax be enacted, the revenues to be "used for general City projects or General Fund operations as approved by the City Council during adoption of its budget."

Under Ordinance No. 1058, the City's RPDT and BCDT were discontinued. Ordinance No. 1058 provided that while the latter taxes could be construed as fees because they were collected to fund capital improvements, the Property Development Excise Tax was a tax imposed to raise revenue for general purposes. Ordinance No. 1058 also provided that the excise tax was "a general tax imposed on the privilege of developing property and benefiting from City Services."

As the legislative history of Ordinance No. 1058 demonstrates, its purpose was to comply with the requirements of section 66000 et seq. Moreover, Ordinance No. 1058 does not conflict with section 66000 et seq.; section 66000 specifically exempts taxes from its ambit. In enacting Ordinance No. 1058, the City chose to replace two existing taxes with a general excise tax in order to be able to raise revenue for general purposes, and not simply to fund capital improvements as the existing taxes had. Because the face of the Ordinance as well as its legislative history state that the City imposed a "tax," we must accept the City's clear expression of its legislative intent. (See *Viking Pools, Inc.* v. *Maloney, supra,* 48 Cal.3d 602 at p. 606 [phrase in statute "susceptible of only one reasonable interpretation in light of the clear, prophylactic purpose underlying the entire statutory system of which it is a part"].)

■ The City has the power to impose taxes to generate revenue for public purposes. "[T]he power to raise revenue for local purposes is not only appropriate but, indeed, absolutely vital for a municipality. (*United States* v.

*New Orleans* (1878) 98 U.S. 381, 393 [ ]; *Ex Parte Braun* (1903) 141 Cal. 204, 209 [ ].) Moreover, the power to tax for local purposes clearly is one of the privileges accorded chartered cities by the home rule provision of the California Constitution. [Citations.]" (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449].)

 An excise tax may properly be imposed on the privilege of developing property. (See *City of Oakland* v. *Digre* (1988) 205 Cal.App.3d 99, 106 [252 Cal.Rptr. 99].) "[A]n excise tax is 'a tax on the exercise of one of the incidences of property ownership,' such as the ability to transfer or devise property or the ability to use, store, or consume it." (*Ibid.*) It is " '. . . imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved.' " (*City of Huntington Beach* v. *Superior Court* (1978) 78 Cal.App.3d 333, 341 [144 Cal.Rptr. 236].) The excise tax here has all of the characteristics of a privilege tax. It is imposed only upon approval and issuance of a building permit which generally precedes the exercise of the privilege of developing property. It is imposed to raise revenue for the City's general fund and not for the limited purpose of funding public facilities or services related to a new development. In contrast, " '. . . [development] fees are commonly imposed on developers by local governments in order to lessen the adverse impact of increased population generated by the development.' " (*California Bldg. Industry Assn.* v. *Governing Bd.* (1988) 206 Cal.App.3d 212, 235 [253 Cal.Rptr. 497].)

That the excise tax is not a development fee is further evidenced by the City's enactment of a public facilities impact mitigation fee and a transportation impact mitigation fee. These development fees were specifically enacted to offset the impact on public facilities caused by new development. Ordinance No. 1102, which enacted the latter fee after the passage of Ordinance No. 1058, supports the City's position that it sought to comply with section 66000 et seq. rather than circumvent the statute. "The City Council finds that during the course of the process [responding to Assembly Bill No. 1600 and reassessing the City's fees and taxes] it has recognized the ambiguous status of the former Real Property and Bridge Construction Development Taxes, which despite their name, actually resembled fees in many respects. Those Taxes were adopted at a time when the distinctions between fees and taxes did not carry the implications they do today. In response to AB 1600, and in recognition of the City's need to develop a general funding mechanism to meet general service needs, the City Council finds that the former Development Taxes have been reassessed and, where appropriate, structured as fees or taxes. For example, to the effect that those

former Taxes were meant to offset new development's impact on capital facilities, they have been restructured as fees; the Public Facilities Fee loosely succeeds the former Real Property Development Tax and the present Transportation Fee loosely succeeds the former Bridge Construction Development Tax. To the effect that those former Taxes were meant to be construed as taxes and provide the City with discretion to spend their proceeds, they have been succeeded by the Property Development Excise Tax." In view of this clear expression of legislative intent and appellants' failure to show that the excise tax conflicts with a state statute, we conclude that the excise tax is valid.

Accordingly, we affirm the judgment of the trial court. The City shall recover its costs on appeal.

Poché, Acting P. J., and Reardon, J., concurred.

Appellants' petition for review by the Supreme Court was denied Feburary 3, 1994.