[No. D031348. Fourth Dist., Div. One. May 19, 1999.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Trevor A. Grimm; Jonathan M. Coupal; and Timothy A. Bittle for Plaintiffs and Appellants.

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, and James M. Chapin, Deputy City Attorney, for Defendant and Respondent.

Richards, Watson & Gershon, Michael G. Colantuono, Rubin D. Weiner and T. Peter Pierce for 85 California Cities and Towns as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**KREMER, P. J.**—The issue here is whether a business improvement district (BID) assessment imposed on businesses is governed by Proposition 218 (Cal. Const., arts. XIII C, XIII D[1]). We conclude Proposition 218 does not apply and affirm.

### Factual and Procedural Background

The plaintiffs in this case are four businesses[2] in Pacific Beach who are subject to a levy pursuant to the Pacific Beach BID and the Howard Jarvis Taxpayers Association (hereafter collectively referred to as the Association). The plaintiffs, through counsel, registered their opposition to the Pacific Beach BID at a public hearing in June 1997. Following the public hearing, the City of San Diego (the City) adopted City Ordinance No. O-18373, creating the Pacific Beach BID. Thereafter, the plaintiffs filed a complaint for declaratory and injunctive relief, contending the adoption of the Pacific Beach BID levied an assessment or special tax in violation of Proposition 218. The City successfully moved for summary judgment on the basis Proposition 218 did not apply to the Pacific Beach BID and obtained a judgment against the plaintiffs.

### Discussion

I

### *Pacific Beach BID and the Parking and Business Improvement Area Law of 1989*

The City adopted the Pacific Beach BID pursuant to the Parking and Business Improvement Area Law of 1989 (hereafter referred to as the 1989 Act) (Sts. & Hy. Code,[3] §§ 36500-36551). The 1989 Act authorizes the levy of assessments on businesses to fund property-related improvements[4] and

---

[1]All references to articles are to articles of the California Constitution unless otherwise specified.

[2]The businesses are: Louis P. Kartsonis, M.D., Inc., Skip Frye Surfboards, Thomas Cummings, M.D. and Frank C. Daniel.

[3]All statutory references are to the Streets and Highways Code unless otherwise specified.

[4]Improvements include, but are not limited to: parking facilities, benches, trash receptacles, street lighting, decorations, parks and fountains. (§ 36510.)

activities.[5] (§§ 36501-36503, 36522, subd. (d), 36527, subds. (f) & (g).) The Legislature has found "it is in the public interest to promote the economic revitalization and physical maintenance of the business districts of its cities in order to create jobs, attract new businesses, and prevent erosion of the business districts" as well as to promote tourism. (§ 36501, subds. (b) & (d).) These assessments, although they may benefit property within the BID "area directly or indirectly," "are not taxes for the general benefit of a city, but are assessments for the improvements and activities which confer special benefits upon the businesses for which the improvements and activities are provided." (§ 36501, subd. (e).) The 1989 Act contrasts with the Property and Business Improvement District Law of 1994 (§ 36600 et seq.), "an alternative method of financing certain improvements and activities" (§ 36617) that provides for assessments on real property (rather than business owners) within a BID except for property which is zoned solely for residential or agricultural use (§ 36634).

The purpose of the Pacific Beach BID was "to provide revenue to defray the costs of services and programs which will benefit businesses in the area." These services and programs included acquiring, constructing or maintaining parking facilities to benefit the area, decorating any public place in the area, promoting public events to take place on or in public places in the area, furnishing music in a public place in the area and generally promoting business activities in the area.

The Pacific Beach BID imposes a levy on businesses within the BID's geographical limits. The Pacific Beach BID classifies businesses into various categories depending on the number of employees or, in the case of motels and apartments, on the number of rooms.[6] There are two zones within the

---

[5]Activities include, but are not limited to:

"(a) Promotion of public events which benefit businesses in the area and which take place on or in public places within the area.

"(b) Furnishing of music in any public place in the area.

"(c) Promotion of tourism within the area.

"(d) Activities which benefit businesses located and operating in the area." (§ 36513.)

[6]The businesses are classified as: banks and businesses with 21 or more employees (category A); businesses with 13 to 20 employees (category B); businesses with 3 to 12 employees (category C); businesses with 0 to 2 employees (category D); apartments/hotels/motels with 66 or more units (category E); apartments/hotels/motels with 21 to 65 units (category F); apartments/hotels/motels with 6 to 20 units (category G). Businesses not specifically identified in these categories are to be categorized by the City Treasurer upon application of a city business tax certificate. (City Ord. No. O-18373, § 3, subd. B.)

Pacific Beach BID.[7] The amount of the assessment imposed on a business depends on the applicable zone as well as business category. (City Ord. No. O-18373, § 3, subd. C.)

## II

### *Proposition 218*

Proposition 218, the "Right to Vote on Taxes Act," was adopted by the voters in November 1996. The stated purpose of Proposition 218 was to "protect[] taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Prop. 218, Gen. Elec. (Nov. 5, 1996) § 2, p. 108.) The proposition generally provides for taxpayer approval for the adoption, extension or increase of taxes or assessments. Proposition 218 added article XIII C involving general and special taxes and article XIII D involving assessments.

## III

### *Assessments Under Proposition 218*

The City and the amici curiae[8] argue Proposition 218's provision for assessments, by its terms, does not apply to the Pacific Beach BID assessment. We agree.

In construing a constitutional provision adopted by the voters, our primary task is to determine the voters' intent. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) In determining intent, we look first at the words of the proposition. (*Ibid.*) When the language is clear and unambiguous, there is no need for construction nor is it necessary to resort to an " ' "indicia of the intent . . . [by] the voters . . . ." [Citation.]' " (*Ibid.*; *Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 24 [56 Cal.Rptr.2d 706, 923 P.2d 1].) " 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Of course, in construing the statute, '[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment.' " (*People* ex rel.

---

[7]Zone No. 1 consists of all business addresses on Mission Boulevard or Garnet Avenue within the BID. Zone No. 2 includes all other business addresses in the BID. (City Ord. No. O-18373, § 3, subd. A.)

[8]The amici curiae consist of 85 California cities and towns who support the position of the City.

*Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

 Proposition 218 contains a specific definition of the term "assessment" as part of article XIII D. "Assessment" is defined "[a]s used in this article" to mean: ". . . any levy or charge *upon real property* by an agency for a *special benefit conferred upon the real property.* 'Assessment' includes, but is not limited to, 'special assessment,' 'benefit assessment,' 'maintenance assessment' and 'special assessment tax.'" (Art. XIII D, § 2, subd. (b), italics added.)

This definition of "assessment" is unambiguous; it applies only to levies "upon real property."[9] As the Association acknowledges, the assessment here was not imposed upon real property but upon businesses in the BID.

The Association nonetheless argues Proposition 218 applies to the Pacific Beach BID, asserting Proposition 218 provides "a constitutional definition of assessment," which includes but is not limited to " 'special assessment,' " " 'benefit assessment,' " " 'maintenance assessment' " and " 'special assessment tax.' " The Association asserts: "Because the City's business improvement 'assessment' is conceded to be a levy which is *not* based on property, *it is in conflict with the constitutional definition of assessment.* Wherever statutes conflict with constitutional provisions, the latter must prevail. [Citation.] The Constitution is the supreme law of the state and neither transient urgency nor abstract practicality can override it. [Citation.]" (Italics added by the Association.)

Respectfully, the argument fails. Proposition 218 plainly states the definition of the term "assessment" is "[a]s used in this article." "[T]he phrase 'as used in this article' carefully limits the field of application" to article XIII D. (See *Rihn* v. *Franchise Tax Board* (1955) 131 Cal.App.2d 356, 366 [280 P.2d 893].) Proposition 218 clearly does not state a constitutional definition of assessment for all constitutional and statutory provisions. To read such an all encompassing "constitutional definition" of assessment into Proposition 218 would require us to ignore the clear language of the proposition and rewrite the proposition. This we may not do.

Moreover, as the City and amici curiae point out, construing Proposition 218 as providing for a "constitutional definition" of "assessment" would

---

[9]The conclusion that Proposition 218 assessments are limited to real property assessments is also supported by other provisions requiring the local government to "identify all *parcels* which will have a special benefit conferred upon them," and to give written notice to "the record *owner of each parcel.*" (Art. XIII D, § 4, subds. (a) & (c), italics added.)

result in repealing by implication many other statutory "assessments" which are not property based and which appear to be clearly outside the scope of the proposition.[10] The Association does not argue that Proposition 218's definition of an "assessment" applies to these statutes but argues they are distinguishable because they "are levies imposed by the *state*, not local governments." (Italics added by the Association.) We find this distinction of little persuasive value. The very nature of the argument belies an assertion Proposition 218 was intended to adopt a "constitutional definition" of "assessment" applicable to all statutes, including the 1989 Act.

Nor are we persuaded by the Association's argument Proposition 218 should be construed as applying to the Pacific Beach BID because one of the purposes of drafting Proposition 218 was to restrict parking and business improvement areas, and Proposition 218 provides it is to be liberally construed (Prop. 218, Gen Elec., *supra*, § 5, p. 109). Liberal construction cannot overcome the plain language of Proposition 218 limiting the scope of its

---

[10]See, e.g., Business and Professions Code section 17550.44 ("assessments" for emergency restitution and operations fund of Travel Consumer Restitution Corporation); Corporations Code section 5151 ("assessments," fees and dues should be set forth in corporate bylaws); Financial Code section 270 et seq. ("assessments" on savings and loan associations to share the costs of administration); Food and Agricultural Code section 52351 et seq. ("assessments" on food labelers, to be paid to the state, assessed by a formula based on gross annual dollar volume sales in the state); Food and Agricultural Code section 66625 ("assessments" on iceberg lettuce handlers to cover the costs of the California Iceberg Lettuce Commission); Food and Agricultural Code section 67101 ("assessments" on avocado producers and distributors to cover the costs of the California Avocado Commission); Food and Agricultural Code sections 68101 and 68107 ("assessments" on kiwifruit producers to cover the costs of the California Kiwifruit Commission); Food and Agricultural Code section 69081 ("assessments" on pistachio producers to cover the costs of the California Pistachio Commission); Food and Agricultural Code section 71120 ("assessments" on rice producers to cover the costs of the California Rice Commission); Food and Agricultural Code section 74951 ("assessments" on vintners to cover the costs of the California Winegrape Growers Commission); Food and Agricultural Code section 76141 ("assessments" on cherry producers to cover the costs of the California Cherry Commission); Government Code section 15372.105 et seq. ("assessments" on businesses pursuant to the California Tourism Marketing Act, established by industry category); Health and Safety Code section 1356 ("assessments" for administrative costs of heath care service plans, assessed based on number of enrollees); Insurance Code section 10089.23 ("assessments" to cover the costs of the earthquake loss fund, assessed on insurance companies); Public Resources Code sections 3408 and 3420 ("assessments" on oil or gas producers); and Labor Code section 50 et seq. ("assessments" on employers to cover the costs of the Workers' Compensation Administration Revolving Fund, calculated in proportion to payroll in any given year). See also Business and Professions Code section 2538.1, subdivision (b)(3)(E) (training for speech/language pathology assistant includes "[a]ssisting a speech-language pathologist during assessments"); Civil Code section 1364 ("special assessment" by members of a planned development for termite damage); and Public Resources Code section 21061.2 (" 'Land evaluation and site assessment' means a decisionmaking methodology for assessing the potential environmental impact of state and local projects on agricultural land.").

assessments to assessments based on real property. Nor is there anything in the language of Proposition 218, or in the ballot arguments, that supports a conclusion Proposition 218 was intended to encompass assessments imposed in the 1989 Act. Nothing in the ballot arguments or language of the proposition would have alerted the electorate to such a construction.

We conclude the Pacific Beach BID assessment is not an "assessment" within the meaning of Proposition 218.

IV

*Special Taxes Under Proposition 218*

■ Alternatively, the Association argues the Pacific Beach BID levy on the business owners was a "special tax" within the meaning of Proposition 218. The Association argues the proposition's findings and declarations support such a conclusion. Proposition 218's "Findings and Declarations" state: "The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Prop. 218, Gen. Elec., *supra*, § 2, p. 108.)

Proposition 218 defines a "[s]pecial tax" as "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund." (Art. XIII C, § 1, subd. (d).) Under Proposition 218, a local government may not impose, extend or increase any special tax unless the "tax is submitted to the electorate and approved by a two-thirds vote." (Art. XIII C, § 2, subd. (d).)

■ California law recognizes a distinction between a "special tax" and "special assessment." The Supreme Court in *Knox* v. *City of Orland* (1992) 4 Cal.4th 132, 141-142 [14 Cal.Rptr.2d 159, 841 P.2d 144] explained the distinction: "A special assessment is a ' " 'compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein . . . .' " [Citation.]' [Citation.] In this regard, a special assessment is 'levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that

improvement.' [Citation.] 'The rationale of special assessment is that the assessed property has received a special benefit over and above that received by the general public. The general public should not be required to pay for special benefits for the few, and the few specially benefited should not be subsidized by the general public. [Citation.]' [Citation.] Thus, '[a]lthough a special assessment is imposed through the same mechanism used to finance the cost of local government, in reality it is a compulsory charge to recoup the cost of a public improvement made for the special benefit of particular property.' [Citation.]

"A tax, on the other hand, is very different. Unlike a special assessment, a tax can be levied ' "without reference to peculiar benefits to particular individuals or property." ' [Citations.] Indeed, '[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.' [Citations.] The same holds true even for a special tax which, for purposes of section 4 [of article XIII A[11]], is a tax levied to fund a specific governmental project or program (*Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 15 [2 Cal.Rptr.2d 490, 820 P.2d 1000]; [*County of Fresno* v.] *Malmstrom* [(1979)] 94 Cal.App.3d [974,] 984 [156 Cal.Rptr. 777] [a special tax 'need not . . . specifically benefit the taxed property' in the same manner as a special assessment].).”

Whether an assessment imposed on business owners was a "special tax" has been addressed by the court in *Evans* v. *City of San Jose* (1992) 3 Cal.App.4th 728 [4 Cal.Rptr.2d 601]. Specifically, the *Evans* court addressed whether a levy imposed on business owners for a BID adopted under the 1989 Act was a special tax within the meaning of article XIII A, section 4 (Proposition 13). The court rejected the argument. The *Evans* court noted that while the levy on business owners pursuant to the 1989 Act was "not a true special assessment" because it was "neither a charge on real property nor [was] its purpose to pay for permanent public improvements specifically benefiting the assessed real property," that did not lead to a conclusion the levy was a "special tax." (*Evans* v. *City of San Jose, supra,* 3 Cal.App.4th at pp. 737-738.) The court explained: "The reasons the regulatory and development fee cases and the special assessment cases are exempt from the reach of Proposition 13 are the same reasons the [1989] Act and [BID] ordinance should also be exempt from its reach. With each of these cases, a discrete

---

[11]Article III A, section 4 provides: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

group receives a benefit (for example, a permit to build or inspection of produce) or a service (for example, providing and administering a rental dispute mediation and arbitration hearing process) or a permanent public improvement (such as a local park or landscaped median islands on a local road) which inures to the benefit of that discrete group. The public as a whole may be incidentally benefitted, but the discrete group is specially benefitted by the expenditure of these funds. [Citations.] The public should not be required to finance an expenditure through taxation which benefits only a small segment of the population. [Citation.] If it·is asked to do so, it must agree by a two-thirds vote. On the other hand, where the burden for these expenditures is borne by the group specifically benefitted by them, Proposition 13 is not implicated." (*Id.* at p. 738.)

■ The reasoning of the *Evans* case applies equally to this case. We find unpersuasive the Association's assertion one of the motivating forces behind the move to adopt Proposition 218 was to overrule the *Evans* decision. Nothing in the ballot materials nor the text or declaration and findings of Proposition 218 reflects any such intent. No reference to the *Evans* decision is contained in the ballot materials or the proposition, and although *Evans* held a BID levy is a type of assessment, Proposition 218 limited the term "assessments" to levies on real property and did not adopt any new definition of "special taxes." We see nothing in Proposition 218 which purports to adopt a new and different meaning of "special taxes" from that reflected in the *Knox* and *Evans* decisions.

No reversal is merited on this ground.

DISPOSITION

The judgment is affirmed.

Work, J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 18, 1999.