97 Cal.Rptr.2d 100 (2000)
81 Cal.App.4th 685
Edward M. TEYSSIER, Plaintiff and Appellant,
v.
CITY OF SAN DIEGO, Defendant and Respondent.
City of San Diego Plaintiff, Cross-Defendant and Respondent,
v.
Robert L. McCarty, Defendant, Cross-Complainant and Appellant.
Nos. D033171, D033622.
Court of Appeal, Fourth District, Division One.
June 15, 2000.
As Modified June 30, 2000.
Rehearing Denied July 14, 2000.
Review Granted September 13, 2000.
*101 Blumenthal, Ostroff & Markham, Norman B. Blumenthal, David R. Markham, Sheldon A. Ostroff, San Diego, and Kyle R. Nordrehaug, Escondido, for Plaintiff and Appellant in No. D033171 and Defendant, Cross-complainant and Appellant in No. D033622.
*102 Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, James M. Chapin and Grant Richard Telfer, Deputy City Attorneys for Defendant and Respondent in No. D033171 and Plaintiff, Cross-defendant and Respondent in No. D033622.
WORK, Acting P.J.
The sole issue presented by these consolidated appeals is whether City of San Diego Municipal Code (SDMC) section 31.0305, which levies a rental unit business tax (RUBT) upon property owners who rent their residential real estate, is valid under California Constitution articles XIII, XIII C and XIII D. Edward M. Teyssier and Robert L. McCarty appeal separate judgments in favor of the City of San Diego (City) after trial courts ruled the RUBT is a constitutionally valid excise tax, not a property tax. Teyssier and McCarty contend the court erred because the RUBT is imposed on owners of residential real property as an incident of property ownership and thus violates article XIII D, section 3, subdivision (a) of the California Constitution. As we shall explain, we conclude the RUBT is an excise tax not governed by article XIII D and is constitutionally valid under article XIII C. Accordingly, we affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND[1]
In 1942, City began assessing a business tax on apartments and hotels, levied on "[e]very person conducting, operating or managing an apartment house or hotel, as defined by the State Housing Act." In 1950, the SDMC was amended to provide for assessments on rental housing of six or more units. In February 1987, the housing permit fee was combined with the RUBT creating a single tax. In 1990 and 1992, SDMC section 31.0305 was amended to increase the RUBT and, more dramatically, to eliminate the exemption for realty encompassing less than six rental units and to impose a new tax on rented single-family residences. In 1993, the section was substantially rewritten, defining essential terms within the SDMC, as well as increasing and modifying the rate at which properties would be taxed. The 1993 amendment was the last change to the ordinance that increased the amount of tax. That version of the ordinance remained substantially intact, as the 1996 revisions resulted in non-rate-related changes. Currently, SDMC section 31.0305,[2] subdivision (b) imposes the *103 RUBT annually on every person who conducts, operates, manages or rents any residential real estate, including an apartment house, flat dwelling, single or multiple family dwelling, duplex, or any other dwelling. The tax formula is $50 plus $5 per unit for 1 to 10 units, $57 plus $9 per unit for 11 to 100 units and $150 plus $8 per unit for more than 100 units. According to SDMC sections 31.0101[3] and 31.0310,[4] the RUBT was adopted for revenue purposes only, with all monies collected being deposited in City's General Fund to be expended for general governmental purposes.
The RUBT is levied and collected as follows: City regularly receives a computer tape from the San Diego County Tax Assessor's Office containing information regarding real property tax ownership for persons and parcels in the City. The data is correlated to eliminate all nonresidential property and all property for which a homeowner's exemption has been filed. This information is updated throughout the year. At a designated time, the RUBT bills are sent by City to residential owners who have not filed a homeowner's exemption. Owners who are eligible for a different exemption (i.e., Section 8 housing (see United States Housing Act of 1937, 42 U.S.C. § 1437f), non-profit corporation, etc.) may claim the exemption by using a City-provided form. Consequently, the RUBT is levied only upon residential property owners who have not claimed a homeowner's or other exemption and have *104 actually rented their residential property during the year. In other words, if the property is neither rented nor being marketed for rent, it is not taxable. (SDMC, § 31.0305, subd. (h).)
In 1996, the California electorate adopted Proposition 218, entitled the "Right to Vote on Taxes Act." The proposition was based on the following findings and declarations:
"The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Historical Notes, 2A West's Ann. Const. (2000 pocket supp.) art. XIII C., § 2, p. 25.)
Proposition 218 enacted California Constitution articles XIII C and XIII D, further restricting the taxing power of local governments. Article III C requires majority voter approval as a precondition to imposing, extending or increasing any local general tax (Cal. Const., art. XIII C, § 2, subd. (b)), and defines a "general tax" as any tax imposed for general governmental purposes unlike a "special tax" which is one imposed for specific purposes (Cal. Const., art. XIII C, § 1, subds. (a), (c)). It further requires that all local taxes be designated either general or special. (Cal. Const., art. XIII C, § 2, subd. (a).) Article XIII D provides in part:
"No tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership except:
"(1) The ad valorem property tax imposed pursuant to Article XIII and Article XIII A.
"(2) Any special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A.
"(3) Assessments as provided by this article.
"(4) Fees or charges for property related services as provided by this article."
(Cal. Const., art. XIII D, § 3, subd. (a).) The terms "fee" and "charge" are defined in section 2(e) of article XIII D as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." Finally, section 6 of article XIII D requires governmental entities to follow specified procedures before imposing or increasing property-related fees or charges. These include notice to identified property owners who would be subject to the proposed new or increased fee, a public hearing on the proposal, and rejection of it if written protests against the proposal are presented by a majority of the identified owners of the affected parcels.[5]

*105 THE RUBT IS AN EXCISE TAX

Article XIII, section 1 requires a property be taxed on an ad valorem basis, that is, in proportion to its value. (Cal. Const., art. XIII, § 1, subds.(a), (b).) City acknowledges the RUBT is a flat tax assessed on a residential rental unit with the amount of tax determined by the number of rental units contained in the dwelling. As such, the tax is not based on the value of the property and cannot be characterized as an ad valorem tax. However, City correctly asserts, and the trial courts correctly concluded, the RUBT is an excise tax imposed for general governmental purposes, rather than a property tax, and thus is not covered by article XIII.
Resolving whether a particular tax is a property or excise tax is not always an easy matter. (Thomas v. City of East Palo Alto (1997) 53 Cal.App.4th 1084, 1088, 62 Cal.Rptr.2d 185.) Its character is determined not by merely its nomenclature or the title attached to it by the enacting authority, but rather by its incidents, the natural and legal effect of its language, and the real object, purpose and result of its enactment. (Id. at p. 1089, 62 Cal.Rptr.2d 185; Flynn v. San Francisco (1941) 18 Cal.2d 210, 214-215, 115 P.2d 3; City of Oakland v. Digre (1988) 205 Cal. App.3d 99, 105, 252 Cal.Rptr. 99.)
"Generally, a property tax taxes ownership per se without conditions ... [while] an excise tax is `a tax on the exercise of one of the incidences of property ownership,' such as the ability to transfer or devise property or the ability to use, store, or consume it. Stated another way, the excise tax is a tax on the privilege of exercising the taxed incident of ownership. [Citation.]" (City of Oakland v. Digre, supra, 205 Cal.App.3d at p. 106, 252 Cal.Rptr. 99.)
Because it is imposed upon the right to exercise a privilege, the payment of an excise tax invariably is a condition precedent to the exercise of the privilege involved. (Centex Real Estate Corp. v. City of Vallejo (1993) 19 Cal.App.4th 1358, 1364, 24 Cal.Rptr.2d 48.) Consequently, a property tax is one the imposition of which is triggered merely by property ownership, while an excise tax is one imposed upon a particular use of property or the exercise of a privilege associated with its ownership, such as sale, transfer, rental, etc. (Thomas v. City of East Palo Alto, supra, 53 Cal.App.4th at pp. 1088-1089, 62 Cal. Rptr.2d 185.)
The language of SDMC section 31.0305 makes it unmistakably clear the RUBT is an excise tax, not a property tax. Its imposition is not predicated merely on ownership of real property, but on the owner "conducting, operating, managing or renting" residential real estate. (SDMC, § 31.0305, subds.(b), (c).) In other words, only owners who use their property to produce rental income are subject to the tax based on their exercise of an "incident" of ownershiprenting the property. The tax does not apply to all property, but only to actually rented residential property. That property owner who has not filed a homeowners exemption may nevertheless be exempted from paying the tax by evidencing the property is not being rented (SDMC, § 31.0305, subd.(h)), clearly establishes it is the business of renting residential property that creates the tax liability. This is consistent with the recognition that "the target of an excise tax can always *106 avoid taxation by not engaging in the privilege taxed." (City of Oakland v. Digre, supra, 205 Cal.App.3d at p. 109, 252 Cal. Rptr. 99.) Finally, mindful it is the practical effect of the tax and the nature of the triggering event that causes the tax to come due which determines its character, the RUBT here is an excise tax the practical effect of which is to tax the use (as a rental) to which the property is put.

ARTICLE XIII D DOES NOT APPLY TO THE RUBT
Teyssier and McCarty contend that regardless whether the RUBT is governed by article XIII, it is nevertheless invalid under article XIII D, because it falls within the meaning of "fee or charge" as expressed in that constitutional provision and the City has not complied with its enactment requirements. They rely on the express mandate that "[n]o tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership." (Cal. Const., art. XIII D, § 3, subd. (a), italics added.) They assert the phrase "upon a person as an incident of property ownership" echoed in the definition of "fee" or "charge" (Cal. Const., art. XIII D, § 2, subd. (e)) must be liberally and broadly construed so that the term "incident" encompasses both the exercise and non-exercise of a particular incident resulting in the mandate's application to excise taxes. They argue the phrase "as an incident" unambiguously refers to "something connected or related to" property ownership. They assert a contrary interpretation would reduce the language to mere surplusage. City responds that taxpayers' interpretation would rewrite the initiative by construing the words "as an incident" as "on an incident" to obtain an interpretation that a "fee or charge" means a levy imposed upon a person upon the exercise of an incident of property ownership.
Our primary task in interpreting a constitutional provision adopted by the electorate is to determine the voters' intent. In doing so, we look first to the words of the proposition. (People v. Jones (1993) 5 Cal.4th 1142, 1146, 22 Cal.Rptr.2d 753, 857 P.2d 1163; Howard Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal.App.4th at p. 685, 86 Cal.Rptr.2d 592; Howard Jarvis Taxpayers Assn. v. City of San Diego (1999) 72 Cal.App.4th 230, 235, 84 Cal.Rptr.2d 804.) "`When [the] language is clear and unambiguous, there is no need for construction and courts should not indulge in it.'" (People v. Benson (1998) 18 Cal.4th 24, 30, 74 Cal.Rptr.2d 294, 954 P.2d 557, quoting People v. Overstreet (1986) 42 Cal.3d 891, 895, 231 Cal.Rptr. 213, 726 P.2d 1288.) Indeed, under such circumstances, it is not necessary to resort to indicia of the intent of the electorate. (People v. Jones, supra, 5 Cal.4th at p. 1146, 22 Cal.Rptr.2d 753, 857 P.2d 1163; Howard Jarvis Taxpayers Assn. v. City of San Diego, supra, 72 Cal.App.4th at p. 235, 84 Cal.Rptr.2d 804.)
"`Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Of course, in construing the statute, `[t]he words ... must be read in context, considering the nature and purposes of the statutory enactment.'" (People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 301, 58 Cal.Rptr.2d 855, 926 P.2d 1042; Howard Jarvis Taxpayers Assn. v. City of San Diego, supra, 72 Cal.App.4th at pp. 235-236, 84 Cal.Rptr.2d 804.)
Finally, we construe a constitutional provision in accordance with the natural and ordinary meaning of its words. (Howard Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal.App.4th at p. 687, 86 Cal.Rptr.2d 592.)
Article XIII D, section 1 expressly applies to all assessments, fees and charges. Consequently, for the RUBT to be subject to the article, it must be an assessment, fee or charge. Article XIII D defines these as "any levy other than an ad valorem *107 tax, a special tax or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Cal. Const., art. XIII D, § 2, subd. (e).) To interpret the phrase "fee or charge ... imposed ... upon a person as an incident of property ownership" as if it read "upon a person for exercising an incident of property ownership" would alter the express language of the definition while ignoring its plain meaning; that is, fees that a person must pay solely because that person owns property and for no other reason. The plain meaning of "incident" as relevant here is "something that occurs ... in connection with something else" or "something appertaining or attaching to something else." (The Random House Diet. (2d unabridged ed.1987) p. 966, col. 2.) By its plain language, article XIII D applies to fees levied strictly as an incident of property ownership, without any additional condition precedent.
Teyssier and McCarty respond that the RUBT, as an "excise tax" on a privilege or use, is expressly subsumed within the cited definition as a "user levy." To the contrary, the concluding appositive phrase to article XIII D, section 2, subdivision (e) identifies the targeted user fees or charges as those which pertain to property-related services, not excise taxes imposed upon a voluntary act of exercising a privilege or use of ownership. This interpretation comports with the language of article XIII D, section 3, subdivision (a)(4)'s exception for "[f]ees or charges for property related services as provided by this article." This interpretation is further amplified in article XIII D, section 6, subdivision (b) that sets forth the requirements for existing, new or increased fees and charges. This provision requires fees and charges to be proportional to the cost of the service which may be imposed only if the services are actually used by or immediately available to the owner of the property. (Cal. Const., art. XIII D, § 6, subd. (b),'(3), (4).) It also prohibits any fee or charge for general governmental services (i.e. police, fire, ambulance or library services) where the service is available to the public at large in substantially the same manner as it is to the property owners. (Cal. Const., art. XIII D, § 6, subd. (b)(5).)[6] Finally, section 6, subdivision (c) excepts fees or charges for sewer, water and refuse collection services in setting forth that no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners or by a two-thirds vote of the electorate residing in the affected area.[7] Contrary to Teyssier and McCarty's suggestion, our interpretation does not render section 3, subdivision (a) mere surplusage.
Were Proposition 218 intended to include excise taxes imposed for the exercise of a privilege of ownership or a particular use of property, its drafters could have said so, clearly and expressly. They did not. (See, e.g., City of Oakland v. Digre, supra, 205 Cal.App.3d at pp. 105-106, 252 Cal.Rptr. 99; City of Huntington Beach v. Superior Court (1978) 78 Cal. App.3d 333, 340-341, 144 Cal.Rptr. 236.) *108 Nor did the supporting election materials and guides explain or even infer such intent by citing targeted examples of such taxes. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Proposition 218 by the Legislative Analyst, argument in favor of and rebuttal to argument against Proposition 218, pp. 73-77;[8] Howard Jarvis Taxpayers Assn., Right To Vote On Taxes Act (Proposition 218), Pre-Election Annotations, Sept. 5, 1996; Howard Jarvis Taxpayers Assn., Proposition 218, Right To Vote On Taxes Act, Statement Of Drafters' Intent, Jan. 1997.)[9] We presume the electorate relied on the plain and natural meaning of the language utilized by the drafters, which clearly distinguishes between simply taxing the status of property ownership and taxing the exercise of privileges or uses associated with ownership.
That Proposition 218 directs it be liberally interpreted to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent (Historical Notes, 2A West's Ann. Const., supra, art. XIII C, § 1, p. 25) does not permit us to judicially enlarge or restrict an initiative's evident meaning. Indeed, it is unwarranted to do so where a constitutional provision is unambiguous.[10] (Howard *109 Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal.App.4th at p. 687, 86 Cal.Rptr.2d 592.)[11]
Moreover, we recognize the rule of interpretation that accords the natural and ordinary meaning to words has an important exception where a word has a well-established legal meaning. Under such circumstances, the word will be given its legal meaning in construing the constitutional provision. (Ibid.; Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 19, 56 Cal. Rptr.2d 706, 923 P.2d 1.) However, here the surrounding words in the contested phrase "as an incident of property ownership," do not permit us to attach the legal meaning to the term "incident" as it pertains to property ownership. Had the drafters intended to apply the legal meaning of "incident", they could have used language such as "on the exercise of or "for exercising" an incident of property ownership. By doing so, they would have clearly avoided the ordinary meaning and use of "incident" and designated its intended legal connotation. By their failing to do so, we cannot presume oversight and rely on an inferentially undeclared legal connotationone that was neither expressly nor impliedly advocated by the drafters in pre or post election materials.[12]

THE RUBT CONSTITUTES A VALID GENERAL TAX UNDER ARTICLE XIII C
As an excise tax not governed by article XIII D, the RUBT is a general tax *110 for the purposes of article XIII C. Section 1, subdivision (a) of article XIII C defines "general tax" as "any tax imposed for general governmental purposes," while subdivision (d) defines "special tax" as "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund." Section 2, subdivision (a) requires that all taxes imposed by a local government be categorized as either general or special. Article XIII C, section 2, subdivision (b) requires majority voter approval as a precondition to imposing, extending or increasing any local general tax. Further, any general tax imposed, extended or increased without voter approval by any local government on or after January 1, 1995, and before the effective date of article XIII C, required majority voter approval within two years of the effective date of article XIII C. (Cal. Const., art. XIII C, § 2, subd. (c).)
In light of the foregoing, the RUBT is a general tax because its proceeds are deposited in the general fund and used for general governmental purposes. (SDMC, § 31.0310.) It is conceded it was not imposed, extended or increased between January 1, 1995 and the effective date of article XIII C. Accordingly, it is a valid, general excise tax.

DISPOSITION
The judgments are affirmed. The City shall have costs.
BENKE, J., and McDONALD, J., concur.
NOTES
[1] The specific procedural histories underlying these consolidated cases are irrelevant to the legal issue presented here on appeal of the validity of the RUBT under California Constitution articles XIII, XIII C and XIII D. Suffice it to say, both cases resulted in judgments declaring the RUBT a constitutionally valid excise tax. We apply de novo review to this pure question of law, exercising our independent judgment and giving no deference to the trial courts' rulings.
[2] SDMC section 31.0305 provides: "(b) Every person conducting, operating, managing or renting any residential real estate, including an apartment house, flat dwelling, single or multiple family dwelling, duplex, or any other dwelling, except a motel or hotel which shall be subject to Section 31.0305(c), shall pay a business tax of fifty dollars ($50) per property plus five dollars ($5) per unit annually on all residential real estate containing at least one dwelling unit but no more than ten dwelling units, fifty-seven dollars ($57) per property plus nine dollars ($9) per unit annually on all residential real estate containing at least eleven dwelling units but no more than one hundred dwelling units, and one hundred fifty dollars ($150) per property plus eight dollars ($8) per unit on all residential real estate containing more than one hundred dwelling units.

"(c) Ever)' person conducting, operating, managing or renting a motel or hotel shall pay a business tax of fifty dollars ($50) per property plus five dollars ($5) per unit annually on all motels and hotels containing at least one dwelling unit but no more than two hundred fifty units and fifty-seven dollars ($57) per property plus nine dollars ($9) per unit annually on all motels and hotels containing more than two hundred fifty units. "(d)(1) The business tax for the rental of residential real estate shall be assessed per property and the liability for such tax shall be determined by the owner-lessor's ownership or leasehold interest in each property. (2) Upon submission of documentary proof acceptable to the City Treasurer, the owner-lessor may obtain a single consolidated business tax: (A) if one single family dwelling or one duplex is situated upon two or more contiguous properties comprising two or more tax assessor parcel numbers; or, (B) if one or more apartment houses, flat dwellings, multiple family dwellings, motels or hotels wholly operated under one ownership as a single rental complex is situated on two or more contiguous tax assessor parcel numbers. (3) Upon submission of documentary proof acceptable to the City Treasurer, owners of eight (8) or more separate parcels of property, having separate tax assessor parcel numbers, the same legal owner, and otherwise subject to separate business tax assessments, may obtain a single consolidated business tax assessment for those properties in excess of the first seven (7) properties only. The first seven (7) properties will remain subject to separate business tax assessments.
"(e) Residential real estate shall include the rental of a single family dwelling, including a mobile home, by an owner-lessor.
"(f) The business tax imposed by Section 31.0305 shall constitute a lien on the real property upon which the business is conducted and shall be collected by the City Treasurer.
"..............................................
"(h) It shall be presumptive evidence that a single family dwelling is considered rented if the owner fails to claim the property tax exemption annually applicable according to the San Diego County Tax Assessor's records. Whenever an owner fails to claim such exemption for any calendar year, it shall be presumed that the properties were rented and therefore subject to the business tax, unless the owner establishes to the satisfaction of the City Treasurer that the premises were not rented. Proof may include copies of any state or federal tax returns showing that there was no rental income received by the owner for the calendar year in which the City Treasurer makes the determination, provided that the owner had not advertised or otherwise held out property as being available for lease or rent during that calendar year."
[3] SDMC section 31.0101 provides in part: "There is hereby imposed a business tax which, under the provisions of this Article, is enacted solely to raise revenue for municipal purposes and is not intended for the purpose of regulation."
[4] SDMC section 31.0310 provides in part: "The taxes imposed under Sections 31.0301 through 31.0308 shall be collected by or remitted to the City Treasurer and deposited to the General Fund of the City (Fund No. 100), to be used for general governmental purposes as the City Council may from time to time provide in accordance with the City Charter of The City of San Diego and its appropriation ordinances and resolutions."
[5] "Proposition 218 can best be understood against its historical background, which begins in 1978 with the adoption of Proposition 13. `The purpose of Proposition 13 was to cut local property taxes....' [Citation.] Its principal provisions limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited increases in the assessed valuation to 2 percent per year unless and until the property changed hands. (Cal. Const., art. XIII A, §§ 1, 2.)[¶] To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate. (Cal. Const., art. XIII A, § 4....) ... [¶] In November 1996 ... the electorate adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution. Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge. (Cal. Const., art. XIII D, § 3, subd. (a)(1)-(4); see also Cal. Const., art. XIII D, § 2, subd. (a).) It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges." (Howard Jarvis Taxpayers Assn. v. City of Riverside (1999) 73 Cal.App.4th 679, 681-682, 86 Cal.Rptr.2d 592.)

For a historical review of the California Tax Initiatives (Propositions 13, 62 and 218), their judicial interpretation, their effects on tax revenues, and the responses of local governments, see Note, What is a Property-Related Fee?: An Interpretation of California's Proposition 218 (1997) 48 Hastings Law Journal 1059, 1060-1076.
[6] This section further provides: "Reliance by an agency on any parcel map, including, but not limited to, an assessor's parcel map, may be considered a significant factor in determining whether a fee or charge is imposed as an incident of property ownership for purposes of this article." Given that SDMC section 31.0305, subdivisions (d)(1), (h) and (f) provide that the RUBT shall be assessed per property, liability is based on ownership, the owner's failure to claim the property tax exemption annually according to the San Diego County Tax Assessor's records is presumptive evidence the dwelling is rented, and the RUBT becomes a lien on the real property, Teyssier and McCarty argue the RUBT is imposed as an incident of property ownership. Again, they ignore (1) the property owner can avoid liability for the RUBT by simply claiming an exemption on a form accompanying the tax bill, and (2) the RUBT is only imposed if the property is being rented or held out for rent.
[7] Additionally, we note section 3, subdivision (b) of article XIII D provides that "[f]or purposes of this article, fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership."
[8] "[B]allot arguments accompanying an initiative may be considered in attempting to ascertain the electorate's intent in adopting the measure." (People v. Benson, supra, 18 Cal.4th at p. 33, 74 Cal.Rptr.2d 294, 954 P.2d 557.)
[9] In fact, the cited materials without contradiction reveal the intent the targeted fees and charges pertain to property related services. For example, the "Analysis by the Legislative Analyst," printed in the November 1996 voter's pamphlet, explains Proposition 218 "would constrain local governments' ability to impose fees, assessments, and taxes;" local governments charge fees to pay for many property-related services; and the measure would restrict local governments' ability to charge "property-related" fees, including fees for water, sewer and refuse collection, while gas and electric fees and development fees are specifically exempted. The analysis concludes the proposed requirements for property-related fees "would require local governments to reduce or eliminate some existing fees. Unless local governments increased taxes to replace these lost fee revenues, spending for local public services likely would be decreased." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), Analysis by the Legislative Analyst, p. 73.) The foregoing supports the interpretation the measure contemplates only service-related fees (i.e., water, sewer and refuse collection charges) and does not target excise taxes such as the RUBT.
[10] Nevertheless, we note our interpretation relying on the ordinary meaning of the language used is entirely consistent with the underlying purpose of Proposition 218 of limiting local agencies' ability to use fees to avoid rules regarding taxes and assessments. In fact, the Howard Jarvis Taxpayers Association (HJTA) drafted Proposition 218 to address levies imposed against property solely due to property ownership. The HJTA in its pre-election annotations, dated September 5, 1996, to California Constitution article XIII D, section 1, at page 4, expressly declared: "[T]he focus of Proposition 218 is on those levies imposed simply by virtue of property ownership." The annotation continues: "Developer fees, in contrast, are imposed as an incident of the voluntary act of development." By analogy, this distinguishment evinces article XIII D was not intended to apply to taxes such as the RUBT, a fee imposed on those who voluntarily engage in the business activity of renting residential property. In their "Proposition 218, Right To Vote On Taxes Act, Statement of Drafters' Intent (January 1997), the HJTA echoed this prior intent at page 7. Indeed, this latter document is silent regarding any declared intent to include excise taxes like the RUBT within the coverage of article XIII D. Rather, the HJTA declared: "One significant impact of Proposition 218 on developers is that a tax imposed on development would be subject to voter approval just like any other tax. For example, in Centex Real Estate Corp. v. City of Vallejo, [supra ], 19 Cal.App.4th 1358, 24 Cal.Rptr.2d 48, the court upheld the legality of a so-called `excise tax' on development levied by a charter city outside the restrictions that state law places on the imposition of developer fees. Because such levies are conceded to be taxes (levied solely for the purpose of raising revenue), they would fall under the purview of Proposition 218's voter approval requirement." (Prop. 218, Right to Vote on Taxes Act, Statement of Drafters' Intent (Jan. 1997) p. 7.) That is, under article XIII C, section 2.

Finally, Teyssier and McCarty's reliance on the maxim expressio unius est exclusio alterius (the expression of some things in a statute necessarily means the exclusion of those things not expressed) (Lake v. Reed (1997) 16 Cal.4th 448, 466, 65 Cal.Rptr.2d 860, 940 P.2d 311) is misplaced regarding the express exception for development levies. The drafters, the HJTA, in the cited documents expressly distinguished such levies from the targeted fees and charges, because imposition is predicated upon the voluntary act of developing, that is, exercising a privilege or use accompanying property ownership.
[11] Conversely, we do not consider our reliance on the natural and ordinary meaning of the language utilized by the drafters necessarily constitutes a strict interpretation of the constitutional provision. (Compare Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245, 149 Cal.Rptr. 239, 583 P.2d 1281, to Los Angeles County Transportation Com. v. Richmond (1982) 31 Cal.3d 197, 203-205, 182 Cal.Rptr. 324, 643 P.2d 941, and City and County of San Francisco v. Farrell (1982) 32 Cal.3d 47, 52-57, 184 Cal.Rptr. 713, 648 P.2d 935.) Rather, where doing so results in no ambiguity, we need not resort to either a liberal or strict interpretive approach to the constitutional measure. However, we note that under the circumstances here if we were to apply either approach, the result would be the same. For example, application of the more liberal intent-based standard of interpretation set forth in Rider v. County of San Diego (1991) 1 Cal.4th 1, 10-11, 2 Cal.Rptr.2d 490, 820 P.2d 1000 (see also Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 235, 45 Cal. Rptr.2d 207, 902 P.2d 225) compels the conclusion that the RUBT was not enacted to avoid the restrictions of Proposition 13 given its nature and history predating the passage of the constitutional measure. Similarly, under a strict interpretive approach utilizing the plain meaning of "incident," a review of the cited relevant election materials suggests the constitutional measure by design contemplates only service-related fees and not an excise tax imposed upon the exercise of a privilege or use of property ownership. (See ante, fns. 10, 11; see also, Note, supra, 48 Hastings L.J. at pp. 1078-1084.)
[12] On December 15, 1999, the California Supreme Court granted review (S059827) of Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles (1999) 74 Cal.App.4th 681, 88 Cal.Rptr.2d 255, a decision holding a fee imposed on residential rental properties to fund a program to eradicate substandard housing constituted a charge upon real property within the meaning of Proposition 218.