116 Cal.Rptr.2d 343 (2002)
95 Cal.App.4th 1227
Jerry RICHMOND et al., Plaintiffs and Appellants,
v.
SHASTA COMMUNITY SERVICES DISTRICT, Defendant and Respondent.
No. C034239.
Court of Appeal, Third District.
February 5, 2002.
Review Granted May 15, 2002.
*345 Law Offices of Walter P. McNeill and Walter P. McNeill, Redding, for Plaintiff and Appellants.
David L. Edwards, Fresno, for Defendant and Respondent.
*344 HULL, J.
Article XIII D of the state Constitution, adopted in 1996 as part of Proposition 218, limits the power of local governments to impose fees and special assessments to pay for governmental services. In this matter, we consider a challenge by various property owners to a resolution adopted by a local water district that increases the connection fee imposed by the district and continues unchanged a fee for fire suppression. Plaintiffs contend the connection fee is a special assessment, which was not adopted in accordance with the requirements of Proposition 218. They further contend the fire suppression charge is prohibited altogether. Finally, plaintiffs contend, in the alternative, the district was without power to adopt the connection fee amendment by way of a resolution. The trial court rejected each of these contentions and entered judgment upholding the enactment. Because we find merit in plaintiffs' second contention, we reverse in part.

Facts and Procedural History
Defendant Shasta Community Services District (District) is a California Community Services District within the meaning of title 6, division 3 of the Government Code (Gov.Code, § 61000 et seq.). In February 1994, the District adopted ordinance No. 1-94, establishing rates for water service and a connection fee of $2,000 for new users. Included in the $2,000 connection fee was a fire suppression charge of $400. On November 12, 1997, the District adopted resolution No. 10-97, amending ordinance No. 1-94. It establishes a water connection fee of $3,176, calculated by dividing the estimated cost of providing new capacity ($762,300) by the projected number of new users (240). Resolution No. 10-97 continues the $400 charge for fire suppression.
Plaintiffs are owners of real property lying both within and contiguous to the District. Various portions of the property they own are proposed for development under a tentative subdivision map. Plaintiffs initiated this action to test the validity of resolution No. 10-97. (Code Civ. Proc, § 860; Gov.Code, §§ 66013, 66022.) Following a contested hearing, the trial court entered judgment for the District. The court concluded the connection charge imposed by resolution No. 10-97 is not a special assessment but a development fee exempt from Proposition 218 and the fire suppression charge is merely the continuation of a fee imposed before Proposition 218 was enacted. The court further concluded there is no requirement that these *346 charges be adopted by way of an ordinance rather than a resolution.

Discussion

I

Background
Proposition 13 was adopted in 1978 for the purpose of reducing property taxes. (County of Los Angeles v. Sasaki (1994) 23 Cal.App.4th 1442, 1451, 29 Cal. Rptr.2d 103.) Essentially, it limits ad valorem property taxes to 1 percent of a property's assessed value and limits increases in assessed value to 2 percent per year unless the property changes hands. (Art. XIII A, §§ 1, 2; further references to articles are to the articles of the California Constitution.) To prevent subversion of its limitations, Proposition 13 prohibits local governments from enacting special taxes without a two-thirds vote of the electorate. (Art. XIII A, § 4; Rider v. County of San Diego (1991) 1 Cal.4th 1, 6-7, 2 Cal.Rptr.2d 490, 820 P.2d 1000.) However, this prohibition does not extend to "special assessments." (Knox v. City of Orland (1992) 4 Cal.4th 132, 141, 14 Cal. Rptr.2d 159, 841 P.2d 144.)
In November 1996, the electorate adopted Proposition 218, the "Right to Vote on Taxes Act," adding articles XIII C and XIII D to the state Constitution. (Howard Jarvis Taxpayers Assn. v. City of San Diego (1999) 72 Cal.App.4th 230, 235, 84 Cal.Rptr.2d 804.) "The stated purpose of Proposition 218 was to `protect[ ] taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent.' (Prop.218, Gen.Elec.(Nov.5, 1996), § 2, p. 108.)" (Howard Jarvis Taxpayers Assn. v. City of San Diego, supra, 72 Cal. App.4th at p. 235, 84 Cal.Rptr.2d 804.)
Article XIII C requires a majority vote of the electorate for any general tax imposed by a local governmental entity, and a two-thirds vote for any special tax. (Art. XIII C, § 2, subds. (b) and (d).) Article XIII D places limitations on assessments and fees. An assessment is defined as "any levy or charge upon real property . . . for a special benefit conferred upon the real property...." (Art. XIII D, § 2, subd. (b).) "Special benefit" is defined as "a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large...." (Art. XIII D, § 2, subd.(i).) A fee or charge is defined as a "levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service." (Art. XIII D, § 2, subd. (e).)
Under Proposition 218, an assessment is prohibited unless "(1) it is supported by an engineer's report ([A]rt. XIII D, § 4, subd. (b)), (2) it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel ( [A]rt. XIII D, § 4, subds. (a), (f)), and (3) it receives, by mailed ballot, a vote of at least half of the owners of affected parcels, weighted `according to the proportional financial obligation of the affected property.' ([A]rt. XIII D, § 4, subds. (c)-(e).)" (Howard Jarvis Taxpayers Assn. v. City of Riverside (1999) 73 Cal.App.4th 679, 682, 86 Cal.Rptr.2d 592.) A fee or charge is prohibited unless (1) the revenue derived therefrom does not exceed the cost of providing the service (art. XIII D, § 6, subd. (b)(1)); (2) the revenue is not used for any other purpose (art. XIII D, § 6, subd. (b)(2)); (3) the fee or charge imposed on a particular parcel does not exceed the proportional cost of providing the service to that parcel (art. XIII D, § 6, subd. (b)(3)); and (4) the fee or charge is approved by a majority of the affected property *347 owners or by two-thirds of the electorate (art. XIII D, § 6, subd. (c)). However, no fee or charge may be imposed for general governmental services that are available to the public at large in substantially the same manner as they are to property owners. (Art. XIII D, § 6, subd. (b)(5).)
Expressly excluded from the reach of Proposition 218 are "existing laws relating to the imposition of fees or charges as a condition of property development." (Art. XIII D, § 1, subd. (b).) "Though the distinction between a tax and other enactments is blurred, taking on a different meaning in different contexts, one distinction has been made repeatedly: [T]axes are compulsory, but development fees are imposed only if a property owner elects to develop." (Loyola Marymount University v. Los Angeles Unified School Dist. (1996) 45 Cal.App.4th 1256, 1267, 53 Cal.Rptr.2d 424.)

II

Special Assessment or Development Fee
For purposes of this appeal, it is undisputed the District did not follow the procedures outlined in Proposition 218 for adoption of a special assessment. Plaintiffs contend resolution No. 10-97 imposes a special assessment rather than a development fee because the underlying purpose of the fee is to defray the cost of capital improvements provided for the special benefit of the property burdened by the fee. Plaintiffs further argue water service is an independent benefit, which can be purchased through the special fee whether or not development is contemplated. Finally, plaintiffs argue the District could not have enacted a development fee in any event because it does not have the power to condition development on payment of the fee.
The District responds that resolution No. 10-97 creates a development fee because the facts are undisputed the fee is imposed only as a condition of development. According to the District, property owners "are not required to pay the capacity expansion fee assessed by Resolution 10-97 until and unless they annex their property into the District and seek to develop that property."
In support of their argument that the connection fee imposed by resolution No. 10-97 is a special assessment, plaintiffs rely primarily on San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154, 228 Cal.Rptr. 47, 720 P.2d 935 (San Marcos). There, a school district challenged a capacity fee imposed by a water district, arguing the fee was a special assessment that could not lawfully be imposed by one governmental entity against another. The water district argued the fee was instead a user fee, which is not constitutionally prohibited because the amount was based on the number of students, i.e., the amount of usage. (Id. at pp. 157-158, 161, 228 Cal.Rptr. 47, 720 P.2d 935.)
The state high court sided with the school district. The court first explained the fee was a hybrid between an assessment and a user fee. However, the court indicated that, regardless of the form, which can easily be manipulated, the purpose of the fee is determinative. According to the court, "a fee aimed at assisting a utility district to defray costs of capital improvements will be deemed a special assessment from which other public entities are exempt." (San Marcos, supra, 42 Cal.3d pp. at 164-165, 228 Cal.Rptr. 47, 720 P.2d 935.)
In contrast with San Marcos is Loyola Marymount University v. Los Angeles Unified School Dist, supra, 45 Cal. App.4th 1256, 53 Cal.Rptr.2d 424 (Loyola *348 Marymount). There, a private university challenged a school impact fee imposed for new construction at the university. The university argued the fee was a special assessment prohibited by San Marcos. The Court of Appeal disagreed, finding it to be a development fee. The court explained: "[T]he development fees at issue here do not have the attributes of a special assessment, because the fees are not imposed for the direct benefit of the property being developed. Rather, the purpose of the fees is to alleviate additional burdens on an already overburdened school district." (Loyola Marymount, supra, 45 Cal.App.4th at pp. 1268-1269, 53 Cal. Rptr.2d 424.)
Plaintiffs argue "[t]he sewer capacity charge examined by the court in San Marcos was conceptually indistinguishable from the water capacity charge here at issue on appeal." According to plaintiffs, the charge is imposed only one time and only upon a request for services; it is intended to defray the cost of capital improvements. Further, as distinguished from Loyola Marymount, the purpose of the fee is to benefit the property being assessed.
We agree the present matter is more analogous to San Marcos than Loyola Marymount. The distinguishing feature is that the connection fee is used to pay for services that benefit the burdened property, as in San Marcos, rather than for services that benefit the public at large, as in Loyola Marymount. However, that does not resolve the issue before us. The question in San Marcos was whether the connection fee was a special assessment within the meaning of article XIII, section 3, subdivision (b), which exempts property of one public entity from taxes imposed by another. Courts have held this exemption impliedly extends to special assessments as well. (San Marcos, supra, 42 Cal.3d at p. 161, 228 Cal.Rptr. 47, 720 P.2d 935.)
In the present matter, the question is not whether the connection fee imposed by resolution No. 10-97 is a special assessment in general but whether it is a special assessment within the meaning of Proposition 218. As noted previously, "special assessment" is defined in article XIII D, section 2, subdivision (b), as "any levy or charge upon real property by an agency for a special benefit conferred upon the real property." As shall be explained, when considered in light of the entire enactment and the underlying purpose of Proposition 218, it is clear this definition was not intended to encompass the situation presented here, i.e., where it cannot be determined at the time the fee requirement is adopted which parcels of property will be burdened thereby.
In assessing the meaning of particular legislation, "`[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, "`The court turns first to the words themselves for the answer.'"'" (People v. Jones (1993) 5 Cal.4th 1142, 1146, 22 Cal. Rptr.2d 753, 857 P.2d 1163, quoting Delaney v. Superior Court (1990) 50 Cal.3d 785, 798, 268 Cal.Rptr. 753, 789 P.2d 934, quoting Brown v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 724, 257 Cal.Rptr. 708, 771 P.2d 406, quoting Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230, 110 Cal.Rptr. 144, 514 P.2d 1224.) Where the language of the provision is clear and unambiguous, "`there is no need for construction and courts should not indulge in it.'" (People v. Benson (1998) 18 Cal.4th 24, 30, 74 Cal.Rptr.2d 294, 954 P.2d 557, quoting People v. Overstreet (1986) 42 Cal.3d 891, 895, 231 Cal.Rptr. 213, 726 *349 P.2d 1288.) However, "[i]f `the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.'" [People v. Hazelton (1996) 14 Cal.4th 101, 105, 58 Cal.Rptr.2d 443, 926 P.2d 423, quoting People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.) "[Statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the law makers [citations], and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute." (Nunn v. State of California (1984) 35 Cal.3d 616, 624-625, 200 Cal.Rptr. 440, 677 P.2d 846.)
Article XIII D, section 4, sets forth the procedures that public entities must follow in imposing assessments. Subdivision (a) requires that the entity "identify all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed." Subdivision (c) requires that the amount of the proposed assessment for each parcel identified be calculated and the record owner notified. "Each notice mailed to owners of identified parcels within the district . . . shall contain a ballot which includes the agency's address for receipt of the ballot once completed by any owner...." (Art. XIII D, § 4, subd. (d).) A public hearing shall be conducted not less than 45 days later. (Art. XIII, § 4, subd. (e).) "The agency shall not impose an assessment if there is a majority protest." (Ail. XIII, § 4, subd. (e).)
The foregoing procedures make sense in the context of an assessment imposed on particular, readily identifiable parcels within the jurisdiction of the imposing entity. They are consistent with the stated purpose of Proposition 218 to limit the power of local governments to exact revenue from taxpayers without their consent. However, the procedures break down in situations such as presented here, where the assessment is based on an estimated number of parcels yet to be identified and the assessment will not be imposed unless and until a particular property owner elects to be included. In order for the District to satisfy the requirements of Proposition 218 in connection with resolution No. 10-97, it would have to be able to identify the parcels for which service will ultimately be requested. This it cannot do.
As explained previously, the distinguishing feature between a tax or assessment and a development fee is the voluntariness of the latter. A property owner is not compelled to pay a development fee unless and until he or she elects to develop the property. Considered as a whole, Proposition 218 was not intended to reach such fees. Proposition 218, like Proposition 13 before it, was intended to protect property owners from being compelled to support government programs out of proportion to the benefits they receive. Assessments within the meaning of Proposition 218 are imposed on readily identifiable property owners within the jurisdiction of the imposing entity. Those property owmers have no choice in the matter. Where the fee is imposed only as a condition of property development, however, leaving the choice whether to be subjected to the fee in the hands of the property owner, it is a development fee exempt from Proposition 218.
Finally, the District relies on article XIII D, section 1, subdivision (b) (misidentified as section 4, subdivision 1) as the basis for an exemption for development fees. However, that provision exempts "existing laws relating to the imposition of fees or charges as a condition of property *350 development." (Art. XIII D, § 1, subd. (b), italics added; see Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles (2001) 24 Cal.4th 830, 844, 102 Cal.Rptr.2d 719, 14 P.3d 930.) Resolution No. 10-97 imposed a fee that was not "existing" at the time Proposition 218 was enacted. However, as explained, the fee at issue here does not satisfy the definition of an "assessment" when considered in light of the entire enactment. Thus, it is exempt whether or not it existed at the time Proposition 218 was enacted.

III

Fire Suppression Charge
Part of resolution No. 10-97 retained a $400 charge for fire suppression that had been included in ordinance No. 94-1. Plaintiffs contend there is no legal basis for the District to impose such a charge. According to plaintiffs, the charge is not an "assessment" because it confers no special benefit on the payer's property. Rather, it is a "fee" for general governmental services prohibited by Proposition 218. Article XIII D, section 6, subdivision (b)(5) reads, in part: "No fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners."
The District responds that plaintiffs cannot complain of a charge that has been in effect for seven years. The District cites article XIII D, section 6, subdivision (a), which requires a local agency to follow the procedures outlined in Proposition 218 "in imposing or increasing any fee or charge as defined pursuant to this article...." (Italics added.) According to the District, there was no imposition or increase of a fee in connection with the fire suppression charge.
The District's argument ignores article XIII D, section 6, subdivision (d), which reads: "Beginning July 1, 1997, all fees or charges shall comply with this section." Although article XIII D, section 6, subdivision (a), which the District cites, deals exclusively with new or increased fees or charges, subdivision (b) of that section concerns new, increased or existing fees and charges. It states "[a] fee or charge shall not be extended, imposed, or increased by any agency unless it meets" the requirements of the subdivision, including the requirement that the fee cannot be for general governmental services available to the public at large in substantially the same manner. ([A]rt. XIII D, § 6, subd. (b)(5).) The Legislative Analyst's report accompanying Proposition 218 stated that, taken together, the restrictions imposed on fees "would require local governments to reduce or eliminate some existing fees." (Ballot Pamp., General Elec. (Nov. 5, 1996) analysis by the Legislative Analyst, p. 73.)
Based on both the language and legislative history of Proposition 218, the restrictions contained in article XIII D, section 6, apply to existing fees and charges, not just those newly enacted or increased. Hence, the District's attempt to extend the fire suppression charge, which concerns general governmental services available to the public at large, violates article XIII D, section 6, subdivision (b)(5).

IV

Resolution or Ordinance
Plaintiffs contend resolution No. 10-97 is invalid because the District could impose the water connection fee only by ordinance. They argue the resolution amended ordinance No. 94-1, and the "equal dignities rule" requires that such amendment *351 be by ordinance as well. They further argue the relevant statutes require that the imposition of water connection fees be by ordinance.
"Strictly speaking, there is a difference between a resolution and an ordinance. "`An ordinance in its primary and usual sense means a local law. It prescribes a rule of conduct prospective in operation, applicable generally to persons and things subject to the jurisdiction of the city. `Resolution' denotes something less formal. It is the mere expression of the opinion of the legislative body concerning some administrative matter for the disposition of which it provides. Ordinarily it is of a temporary character, while an ordinance prescribes a permanent rule of conduct or of government."'" (County of Del Norte v. City of Crescent City (1999) 71 Cal.App.4th 965, 979, 84 Cal.Rptr.2d 179, quoting Central Manufacturing District, Inc. v. Board of Supervisors (1960) 176 Cal.App.2d 850, 860, 1 Cal.Rptr. 733.)
The equal dignities rule is generally applicable to situations where an agent's authority to bind a principal to a written agreement must be in writing. (See Civ. Code, § 2309; California Indemnity Ins. Premium Finance Co. v. Fireman's Fund Ins. Co. (1995) 40 Cal.App.4th 1633, 1637, 47 Cal.Rptr.2d 743; Carlton Browne & Co. v. Superior Court (1989) 210 Cal.App.3d 35, 46, 258 Cal.Rptr. 118.) The only authority cited by plaintiffs for the proposition that the rule applies to amendment of an ordinance is 6 McQuillan, Municipal Corporations (3d ed.1998 rev. vol.) section 21.04, page 251. There, the author states: "The general rule is that an ordinance cannot be amended, repealed or suspended by an order or resolution, or other act by a council of less dignity than the ordinance itself." (Ibid.) However, the authors later limit their broad statement by explaining "there is authority for the position that this familiar rule is entirely subject to the will of the legislature; and if the legislature so wishes, it may alter the rule in any particular case." (6 McQuillan, supra, § 21.04, pp. 251-252.)
The question here is not whether the District has authority to amend an ordinance by something of less formality but whether the relevant statutes grant the District authority to impose or increase fees by resolution. Under the Community Services District Law (Gov. Code, § 61000 et seq.), authority for imposing charges for the use of facilities is found in Government Code section 61621.5. It reads, in relevant part: "Except as otherwise provided in this section, a district may by ordinance adopt regulations binding upon all persons to govern the construction and use of its facilities and property, including regulations imposing reasonable charges for the use thereof." (Gov.Code, § 61621.5, subd. (a), italics added.) Health & Safety Code section 5471 similarly provides: "In addition to the powers granted in the principal act, any entity shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees, tools, rates, rentals, or other charges, including water, sewer standby or immediate availability charges, for services and facilities furnished by it...." (Italics added.)
In conflict with the foregoing provisions, Government Code section 66016, a part of the Mitigation Fee Act (Gov.Code, § 66000.5 et seq.), reads: "Any action by a local agency to levy a new fee or service charge or to approve an increase in an existing fee or service charge shall be taken only by ordinance or resolution. The legislative body of a local agency shall not delegate the authority to adopt a new fee or service charge, or to increase a fee or *352 service charge." (Gov.Code, § 66016, subd. (b), italics added.)
Plaintiffs contend Government Code section 66016 does not expand the limited authority provided in Government Code section 61621.5 and Health & Safety Code section 5471. Rather, according to plaintiffs, Government Code section 66016, viewed in context, "is prohibitory and restrictive in nature, restricting the ability of a local agency to levy a new or increased fee...." Plaintiffs rely on Cavalier Acres, Inc. v. San Simeon Acres Community Services Dist. (1984) 151 Cal.App.3d 798, 199 Cal.Rptr. 4, in which the court held a community services district could not validly increase its water and sewer connection fees by means of a resolution. Applying the well-recognized rule that specific legislation will prevail over conflicting general legislation (County of Santa Clara v. Deputy Sheriffs' Assn. (1992) 3 Cal.4th 873, 883, 13 Cal.Rptr.2d 53, 838 P.2d 781), the court concluded Government Code section 61621.5 and Health & Safety Code section 5471 are the more specific. The court explained: "Government Code section 54992, subdivision (b) [the predecessor of section 66016, subdivision (b) ] is a generalized statute applied to a broad range of public entities and to a number of different fee increases other than sewer and water connections. Government Code section 61621.5 applies to only community service districts such as appellant herein and Health and Safety Code section 5471 applies only to water and sewer connection fees and must, therefore, be found to be the specific provisions prevailing over the broader provisions." (Cavalier Acres, Inc. v. San Simeon Acres Community Services Dist, supra, 151 Cal.App.3d 798 at pp. 801-802, 199 Cal.Rptr. 4.)
We believe the Cavalier Acres, Inc., court got it backwards. Although Government Code section 61621.5 is limited to actions taken by community services districts and Health & Safety Code section 5471 is limited to fees associated with sewer and water services, whereas Government Code section 66016 applies to all types of local public entities and fees, the critical limitation of the latter provision in our view is that it applies only to development fees. Government Code section 66016 is part of the Mitigation Fee Act (Gov.Code, § 66000 et seq.), which deals exclusively with development fees such as at issue here. (See Ehrlich v. City of Culver City (1996) 12 Cal.4th 854, 864, 50 Cal.Rptr.2d 242, 911 P.2d 429.) This is significant because, as explained previously, such fees are imposed only if the property owner elects to develop the property. The Legislature apparently believed the more formal requirements associated with an ordinance are unnecessary for a fee that is not automatically imposed but rather is subject to the property owner's will.
Because Government Code section 66016 deals exclusively with development fees whereas Government Code section 61621.5 and Health & Safety Code section 5471 are not so limited, we believe the former is the more specific and controls this matter. Hence, the District properly adopted the connection fee increase by resolution.

Disposition
The judgment is reversed in part and the matter remanded to the trial court with directions to vacate its judgment and enter a new judgment consistent with the views expressed in this opinion. Each party shall bear its own costs on appeal.
We concur: RAYE, Acting P.J., and CALLAHAN, J.