Filed 7/9/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DESSINS LLC,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF SACRAMENTO et al.,<br><br>    Defendants and Respondents. | C100644<br><br>(Super. Ct. No. 34202280003901CUWMGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Jennifer K. Rockwell, Judge. Affirmed.

Brown Rudnick, Stephen R. Cook, and Shoshana B. Kaiser for Plaintiff and Appellant.

Jarvis Fay and Gabriel McWhirter; Susana A. Wood, City Attorney, Katherine Underwood and Leslie Z. Walker, Deputy City Attorneys, for Defendants and Respondents.

The issue presented by this appeal is whether—under article XIII D, section 6, subdivision (c) of the California Constitution, which was added in 1996 by Proposition

1

218—a city may vote on a storm drainage fee it proposed on behalf of the properties it owns.[1] Dessins LLC filed a petition for writ of mandate and complaint challenging the City of Sacramento's adoption of the fee on the basis that, if the City's votes are excluded, it was not approved by a majority of the votes. The trial court entered judgment in favor of respondents the City and the City Council of the City of Sacramento. We affirm.

## I. BACKGROUND

The relevant facts are not in dispute. In 2022, the City proposed a new storm drainage fee to fund repairs, maintenance, and improvements to its storm drainage system. The fees were to be calculated using a formula that considered parcel size and land use. The City expected the fee to generate approximately $20 million in revenue each year. City-owned properties would have a total annual storm drainage fee of about $496,000.

The City's Department of Utilities conducted an election regarding the proposed storm drainage fee. In February 2022, 130,071 ballots for 154,879 parcels were mailed to property owners who receive storm drainage services and would be subject to the fee. Each property owner received one vote per property with a proposed fee.

The City owned one percent of the properties with a proposed fee: The City Council authorized the City Manager or his designee to sign ballots for 2,007 City-owned properties that would be subject to the fee. Ultimately, 22,178 votes were cast in favor of the fee, and 20,229 votes were cast against the fee. Based on these results, the City adopted the storm drainage fee and authorized the creation of a new accounting fund—the Storm Drainage Property Fee Fund. It is undisputed that had the City not voted its

---

[1] Unspecified references to the "article" are to the California Constitution.

2,007 properties in favor of the fee, the fee would not have been approved by a majority of the votes.

Dessins, a property owner who voted against the fee, filed a petition for writ of mandate and complaint against the City and the City Council seeking declaratory relief and invalidation of the fee. The operative petition and complaint allege, as relevant here, that the adoption of the fee violated article XIII D because the City's votes should not have counted toward reaching the required majority approval. This was the issue that the parties briefed in the trial court.

The trial court concluded the City was entitled to vote in the election and denied the petition for writ of mandate and the complaint.

The court entered judgment in favor of the City and the City Council, and Dessins filed a timely appeal.

## II. DISCUSSION

### A. Standard of Review

"After an agency adopts a property-related fee increase subject to Proposition 218, as here, ratepayers can challenge the quasi-legislative act by filing a petition for writ of mandate. Such litigation differs in two crucial respects from typical mandamus proceedings challenging an agency's action. First, article XIII D places the burden of proving compliance with the article on the agency, rather than on the person challenging the agency's action, as in a typical mandamus proceeding. (Art. XIII D, § 6, subd. (b)(5).) Second, unlike in a typical mandamus proceeding—in which the trial court applies a deferential standard of review to the agency's action—the trial court exercises its independent judgment in determining whether a fee increase is consistent with article XIII D. [Citation.] On appeal, we also apply our independent judgment to the agency's action, deferring to neither the agency nor the trial court." (*KCSFV I, LLC v. Florin County Water Dist*. (2021) 64 Cal.App.5th 1015, 1022-1023.)

3

"We review questions of law about the meaning of Proposition 218, as other questions of law, de novo." (*Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 287 (*Greene*).)

B.      *Proposition 218*

"Proposition 218 . . . is one of a series of voter initiatives restricting the ability of state and local governments to impose taxes and fees. [Citation.] The first of these measures was Proposition 13, adopted in 1978, which limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited annual increases in valuation to 2 percent without a change in ownership. [Citations.] To prevent local governments from increasing special taxes to offset restrictions on ad valorem property taxes, Proposition 13 prohibited counties, cities, and special districts from imposing special taxes without a two-thirds vote of the electorate. [Citations.] But local governments were able to circumvent Proposition 13's limitations by relying on *Knox v. City of Orland* (1992) 4 Cal.4th 132, 141, which held a 'special assessment' was not a 'special tax' within the meaning of Proposition 13. [Citation.] Consequently, without voter approval, local governments were able to increase rates for services by labeling them fees, charges, or assessments rather than taxes." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380-381, fn. omitted (*Plantier*).) " 'In November 1996, in part to change this rule, the electorate adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution.' " (*Greene, supra*, 49 Cal.4th at p. 284.) "Article XIII C concerns voter approval for many types of local taxes other than property taxes." (*Plantier, supra*, p. 381.) It also provides that "[a]ssessments and property-related fees imposed in accordance with the provisions of Article XIII D" are exempted from the definition of "tax" as used in article XIII C. (Art. XIII C, § 1, subd. (e)(7).)

"Article XIII D . . . specifically addresses the means by which local government agencies may impose assessments and property related fees." (*Greene, supra*, 49 Cal.4th at p. 285.) An assessment is "any levy or charge upon real property by an agency for a

special benefit conferred upon the real property." (Art. XIII D, § 2, subd. (b).) A fee is "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (*Id*., subd. (e).) The parties agree the storm drainage fee is a "fee" under Proposition 218.

"Article XIII D imposes distinct procedural and substantive limitations." (*Plantier, supra*, 7 Cal.5th at p. 381.) The "*substantive* limitations on property-related fees appear in subdivision (b) of article XIII D, section 6." (*Id.* at p. 382.) They require that "[r]evenues derived from the fee or charge shall not exceed the funds required to provide the property related service" or "be used for any purpose other than that for which the fee or charge was imposed." (Art. XIII D, § 6, subd. (b)(1)-(2).) Further, the fee imposed on a parcel "shall not exceed the proportional cost of the service attributable to the parcel" and cannot "be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question." (*Id*., subd. (b)(3)-(4).)

The procedures an agency must follow before proposing or increasing any fee are set forth in article XIII D, section 6, subdivision (a), and generally require the identification of "[t]he parcels upon which a fee or charge is proposed for imposition," the calculation of the proposed fee, notice to "the record owner of each identified parcel upon which the fee or charge is proposed for imposition," and a public hearing. (Art. XIII D, § 6, subd. (a)(1).) If a majority of owners of the identified parcels present a written protest, the agency cannot impose the fee. (*Id*. subd. (a)(2).)

This appeal concerns the voting provisions set forth in article XIII D, section 6, subdivision (c), which do not apply to all fees[2]:

---

[2] We have assumed without deciding that the storm drainage fee was subject to these requirements. The parties agree that this appeal does not require us to address whether a

5

"Except for fees or charges for sewer, water, and refuse collection services, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the *property owners of the property subject to the fee* or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. . . .  An agency may adopt procedures similar to those for increases in assessments in the conduct of elections under this subdivision."  (Italics added.)

C.      *The City Is a Property Owner of Property Subject to the Fee*

Dessins argues the City was not authorized to vote on the storm drainage fee, and doing so subverted the purposes of Proposition 218.  We disagree.  Because the City is a "property owner[] of the property subject to the fee," it was authorized to vote on the fee under article XIII D, section 6, subdivision (c).

" ' "The principles of constitutional interpretation are similar to those governing statutory construction.  In interpreting a constitution's provisions, our paramount task is to ascertain the intent of those who enacted it.  [Citation.]  To determine that intent, we 'look first to the language of the constitutional text, giving the words their ordinary meaning.' [Citation.]  If the language is clear, there is no need for construction. [Citation.]  If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent." ' "  (*Greene, supra,* 49 Cal.4th at pp. 289-290.)  " 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the [constitutional text] or rewrite it to conform to an assumed intent that is not apparent in its language.' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.)

---

storm drainage fee is exempted from these requirements by Senate Bill No. 231 (2017-2018 Reg. Sess.).

6

Dessins asserts that being the "record owner" of the property to whom notice must be given under subdivision (a) does not make the City a "property owner[]" under subdivision (c) of article XIII D, section 6. However, Dessins offers no argument that the City does not actually own the property under the plain meaning of that term. Further, nothing in Proposition 218 narrows the definition of a property owner as that term is commonly understood.[3] Rather, Dessins argues "nothing in Article XIII D states that an agency that proposes a fee—and to which the fee will be paid—is entitled to vote on the fee." (Emphasis omitted.) The plain meaning of the phrase "property owner[] of the property subject to the fee" entitles the City to vote in this case. The phrase "subject to," which Dessins does not address until its reply brief, means "governed by" or "affected by." (*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1193; *Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 14.) The City proposed a fee that is imposed on its own properties, thereby making it a property owner of property subject to the fee and entitled to vote under article XIII D, section 6, subdivision (c).

"[T]he description of the procedures for fee elections under article XIII D, section 6 is quite brief." (*Greene, supra*, 49 Cal.4th at p. 288.) As previously set forth, an

_____

[3] Proposition 218 does *add* individuals to the plain understanding of the term: " 'Property ownership' shall be deemed to include tenancies of real property where tenants are directly liable to pay the assessment, fee, or charge in question." (Art. XIII D, § 2, subd. (g).) Dessins argues the fee should be declared invalid because the City did not prove that all property owners were allowed to vote because the City did not provide for voting by tenants. Dessins forfeited this issue by not properly raising it in the trial court. (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913-914.) Additionally, Dessins has not persuaded us that this is a pure question of law applied to undisputed facts in the record, as it points to no law or facts suggesting any tenants would be directly liable to pay the fee. As such, we deny, without reaching the merits, Respondents' motion seeking judicial notice of a chapter of the Sacramento City Code related to billing for utility services. We deferred ruling on this motion and now conclude it is immaterial to our conclusion on appeal.

agency may "adopt procedures similar to those for increases in assessments in the conduct of elections." (Art. XIII D, § 6, subd. (c).) A review of those procedures does not alter our conclusion that the City was entitled to vote. With respect to the procedural limitations for the imposition of assessments, the agency that proposes to levy the assessment must "identify all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed." (Art. XIII D, § 4, subd. (a).) Article XIII D, section 4, subdivision (d) provides that "owners of identified parcels" receive ballots. No exclusion of any property owners is apparent on the face of the provision. Dessins ascribes undue importance to the fact that article XIII D, section 4 pertaining to assessments differs from article XIII D, section 6 pertaining to fees by stating that "[p]arcels within a district that are owned or used by any agency, the State of California or the United States shall not be exempt from assessment unless the agency can demonstrate by clear and convincing evidence that those publicly owned parcels in fact receive no special benefit." (Art. XIII D, § 4, subd. (a).) As respondents note, this provision altered the previously-existing implied exemption for state and local governments from payment of special assessments. (*Valley Baptist Church v. City of San Rafael* (2021) 61 Cal.App.5th 401, 422.) "Under prior law, 'publicly owned and used property that is exempt from property taxation [was] impliedly exempt from special assessments.' [Citation.] 'The rationale behind a public entity's exemption from property taxes and special assessments [was] to prevent one tax-supported entity from siphoning tax money from another such entity.' " (*Ibid.*, quoting *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 161.) "On the other hand, when one tax-supported entity provide[d] goods or services to another, neither the California Constitution nor decisional law exempt[ed] the public entity from paying for these goods or services." (*San Marcos Water Dist., supra*, p. 161.) As such, no express mention of the ability to impose fees on a public agency was required to impose them under article XIII D, section 6. Additionally, *Golden Hill Neighborhood Assn., Inc. v.*

8

*City of San Diego* (2011) 199 Cal.App.4th 416, strongly suggests, though it does not decide, that a city can vote parcels it owns where its assessment amounts and resulting voting weight are properly supported. (*Id*. at pp. 431-435 & fn. 17.) This is consistent with our conclusion that a city may properly vote parcels it owns in a fee election.

Dessins's argument rests almost entirely on our duty to "construe the provisions of article XIII D liberally, ' "to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent." ' " (*City of San Buenaventura v. United Water Conservation Dist*. (2017) 3 Cal.5th 1191, 1204.) "Proposition 218's findings and declarations state: 'The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent.' (Prop. 218, § 2, Stats. 1996, p. A-295; [citation].) It also states: 'The provisions of this act shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.' (Prop. 218, § 5.)" (*Greene, supra*, 49 Cal.4th at pp. 284-285.)

"Liberal construction cannot overcome the plain language of Proposition 218." (*Howard Jarvis Taxpayers Assn. v. City of San Diego* (1999) 72 Cal.App.4th 230, 237; accord *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 844-845.) Furthermore, Proposition 218 *has* limited the City's ability to exact revenue from taxpayers without their consent through the substantive requirements set forth in article XIII D, section 6, subdivision (b) that limit the City's ability to impose fees. Additionally, Dessins's contention that the fee would impose "no burden or net cost on the City, which could simply transfer money from one accounting fund to another," is

incorrect. (Emphasis omitted.) By imposing the fee, the City is requiring itself to pay "the proportional cost of the service" and to not use what it pays for any other purpose than for which the fee was imposed. (Art. XIII D, § 6, subd. (b)(2)-(3).) Thus, the fee will obligate the City to spend about $496,000 a year on its storm drainage system that is not provided by the other property owners. The City's entitlement to a proportional amount of votes did not, as Dessins suggests, render the vote "meaningless" or take the decision about whether to approve the fee out of the hands of taxpayers. The provisions of article XIII D, section 6, subdivision (c), construed liberally, authorized the City's vote.

### III. DISPOSITION

The judgment is affirmed. The City of Sacramento and City Council of the City of Sacramento shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

EARL, P. J.

/S/

_____

FEINBERG, J.

10